# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

DEFENDANTS

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☐ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____ DOCKET NUMBER _____

DATE _____ SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.(a)**  **Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

  **(b)**  **County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

  **(c)**  **Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**  **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked**.**  (See Section III below**; NOTE: federal question actions take precedence over diversity cases.**)

**III.**  **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.**  **Nature of Suit.**  Place an "X" in the appropriate box.  If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable.  Click here for: Nature of Suit Code Descriptions.

**V.**  **Origin.**  Place an "X" in one of the seven boxes.
Original Proceedings.  (1) Cases which originate in the United States district courts.
Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.
Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File.  (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.**  Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**  **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

**VII.**  **Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**  **Related Cases.**  This section of the JS 44 is used to reference related pending cases, if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **PRODUCTIVITY-QUALITY SYSTEMS, INC.**<br>210B East Spring Valley Rd.<br>Dayton, OH 45458<br><br>         Plaintiff,<br><br>    vs.<br><br>**CYBERMETRICS CORPORATION**<br>1523 W. Whispering Wind. Dr.<br>Suite 100<br>Phoenix, AZ 85085<br><br>         Defendant. | Case No. _____<br><br>Judge: _____<br><br><br><br><br><br><br>**COMPLAINT** |

Plaintiff Productivity-Quality Systems, Inc. ("PQ Systems") states for its Complaint against Defendant, CyberMetrics Corporation ("Defendant" or "Cybermetrics"), as follows:

### NATURE OF THE CLAIMS

1.     This is an action for copyright infringement under the Copyright Act of 1976, 17 U.S.C. §101, *et seq.*, misappropriation of trade secrets under the Ohio Uniform Trade Secrets Act, Ohio Rev. Code Ann. §1333.61, *et seq.*, and tortious interference with a contract.

### PARTIES, VENUE AND JURISDICTION

2.     Plaintiff PQ Systems is an Ohio corporation with a principal business address located at 210B East Spring Valley Rd, Dayton, OH 45458.  PQ Systems is a software development company that, for over 30 years, has supplied innovative software

1

solutions that help organizations implement and demonstrate quality improvement programs ("Productivity Quality Software").

3. Defendant CyberMetrics is an Arizona corporation with a principal business address located at 1523 W. Whispering Wind Dr., Suite 100, Phoenix, AZ 85085. CyberMetrics is a software development company that has historically competed with PQ Systems in providing gage management software.

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1338(a), because this action arises under the Copyright Act of 1976, 17 U.S.C. §101, *et seq.* This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367(a), because those claims form a part of the same case or controversy of a claim under the Copyright Act.

5. CyberMetrics conspired with Jeff Aughton, a former PQ Systems employee to misappropriate PQ Systems' trade secrets and exploit its other valuable confidential and proprietary information, including its copyright protected materials. CyberMetrics was or should have been aware of Jeff Aughton's conduct under Ohio jurisdiction, associated with the misappropriation and unauthorized exploitation of PQ Systems' trade secrets and other valuable confidential and proprietary information, and the infringement of PQ Systems' Copyrights. Furthermore, CyberMetrics regularly transacts business within the State of Ohio via the sale of its software development goods and services to Ohio residents, as well as holding seminars within Ohio. Consequently, both general and specific personal jurisdiction is proper.

6. Venue is proper in the United States District Court for the Southern District of Ohio because a substantial portion of the acts giving rise to this case, including the infringement of Plaintiff's copyrights and trade secrets, and tortious

interference with Plaintiff's contracts, occurred in the Southern District of Ohio, and a substantial part of PQ Systems' property that is the subject of this action is located there.

## FACTUAL BACKGROUND

### PQ Systems' Intellectual Property

7. PQ Systems first began offering its flagship statistical process control software, SQCpack, after incorporating in Ohio in 1984. SQCpack helps PQ Systems' clients to collect, analyze and process data and statistics for purposes of implementing and demonstrating quality improvement programs.

8. Shortly after incorporating, PQ Systems secured the telephone number 800-777-3020, which it still utilizes to this day.

9. Since the launch of SQCpack over 30 years ago, PQ Systems has grown and worked tirelessly over many years to perfect its craft, and is now recognized internationally as a premier software development company, serving clients in all 50 states, Europe, Africa, and Australia.

10. Over the years, SQCpack has become a popular and widely distributed product, and is currently installed on workstations at many Fortune 100 companies and household names in the automotive, pharmaceutical, and software development industries, among others.

11. Adding to the success of SQCpack, in 1986 PQ Systems further expanded its offerings to include its innovative GAGEpack gage management software. GAGEpack allows PQ Systems' clients to manage various measurement devices, instruments and gages.

12. In 1991, PQ Systems applied for and received U.S. Copyright Registrations TXu000464578, TXu000466964, and TXu000466951 for its GAGEpack, SQCpack 3.1 and SQCpack plus 1.2 software, respectively.

13. In 1999, SQCpack was again supplemented by CHARTrunner, a powerful statistical process control program that is a derivative of SQCpack and allows for integration of a wider range of data external to the SQCpack ecosystem.

14. SQCpack, GAGEpack, and CHARTrunner allow for PQ Systems' clients to produce charts, graphs, and similar output from statistical data collected by the software. In demonstrating the types of charts and graphs that can be created with its software, PQ Systems has for years supplied its clients with sample charts and/or graphs.

15. Some of the sample charts and/or graphs provided with PQ Systems' software were created with data supplied from the book "Improving Healthcare With Control Charts," written by Raymond G. Carey.

16. Raymond G. Carey was a friend of Dr. Michael Cleary, the founder and former President of PQ Systems, and authorized PQ Systems to utilize data from his book to produce sample charts expressly for the purpose of demonstrating the power of PQ Systems' software applications to clients in the healthcare industry.

17. PQ Systems has since filed additional copyright applications for updated versions of its SQCpack, GAGEpack, and CHARTrunner software source code, as well as sample charts referenced above which are currently pending at the U.S. Copyright office.

18. PQ Systems has also filed copyright applications for unpublished versions of code for ProSPC, a derivative of CHARTrunner that was created by former employee

4

Jeff Aughton within the scope of his employment, and PqChartCore, another program written by Jeff Aughton within the scope of his employment.

19. The content of U.S. Copyright Registration numbers TXu000464578, TXu000466964, and TXu000466951, as well as the updated content in PQ Systems' new Copyright applications for SQCpack, GAGEpack, CHARTrunner, ProSPC, and PqChartCore, and the sample charts, are hereinafter referred to collectively as "Copyright Works."

### PQ Systems' Former Employee Jeff Aughton

20. Jeff Aughton ("Aughton") began employment with PQ Systems in 1989 as a software developer working on SQCpack and GAGEpack.

21. Aughton similarly worked on the development of CHARTrunner prior to and after its 1999 release.

22. Over the course of his first 24 years of employment with PQ Systems, Aughton's seniority within the company increased to the point where he was made a manager within the company and had access to all of PQ Systems' proprietary information, including its trade secrets, source code for all of its software, and other confidential information regarding PQ Systems' clients and business plans.

23. In 2011, an employee by the name David Todd ("Todd") was fired from PQ Systems after it was discovered that he formed his own company called ProQM, which was producing software competitive to PQ Systems and targeting its customers, simultaneous with Todd's employment with PQ Systems.

24. In 2013, Todd sent an unsolicited communication to PQ Systems, informing the company that he had been working with Aughton to develop a software

application based upon CHARTrunner, which would be called ProSPC and would be offered by Todd's company in competition with PQ Systems.

25. Upon learning of Todd's accusations, PQ Systems confronted Aughton and promptly performed a disciplinary hearing.

26. As a result of the disciplinary hearing, facts about Aughton's involvement in ProSPC were confirmed.

27. Aughton planned to work with Todd to sell the ProSPC software through Todd's company, ProQM, and Todd was the one who decided to call the software ProSPC.

28. Aughton wrote the ProSPC software, which was derivative of PQ Systems' CHARTrunner software.

29. Aughton wrote PqChartCore, charting code that was developed from and intended to be used in CHARTrunner, in or about 2006 and 2007.

30. Aughton wrote ProSPC in or about 2007.

31. Aughton ultimately inserted code from PqChartCore into both ProSPC and GAGEpack.

32. ProSPC and PqChartCore are both owned by PQ Systems.

33. As a result of the disciplinary hearing, Aughton, who expressed regret about his actions, was demoted within PQ Systems and no longer maintained his managerial role.

34. On May 8, 2015, Aughton abruptly submitted a one-line resignation letter to the President of PQ Systems.

35. On May 29, 2015, Aughton established his own company called Factoria, Ltd.

6

**Cybermetrics' Actions Against PQ Systems**

36. In 1988, CyberMetrics began selling a product called GAGEtrak, a product that is competitive to PQ Systems' GAGEpack.

37. In 1988, CyberMetrics secured the telephone number 800-777-7020, a number that is only one digit off from PQ System's number, 800-777-3020.

38. Over the years, CyberMetrics did not offer a product competitive to PQ Systems' SQCpack or CHARTrunner software, until 2017.

39. During a 2007 trade show where PQ Systems was exhibiting, agents from CyberMetrics approached PQ Systems' employees and stated CyberMetrics' desire to purchase PQ Systems' assets, including SQCpack, CHARTrunner, and GAGEpack software.

40. At some point prior to August 2017, CyberMetrics began development of InSPC, Productivity Quality Software that is competitive to SQCpack and CHARTrunner.

41. At some point prior to August 2017, CyberMetrics hired Jeff Aughton and/or his company, Factoria Ltd., to assist with the creation of InSPC and/or InSPC+.

42. Under direction by CyberMetrics, Jeff Aughton used his special knowledge of PQ Systems' SQCpack, CHARTrunner, and GAGEpack software, as well as the derivatives ProSPC and PqChartCore, to create copies and/or derivative works of those software which would ultimately be known as InSPC and/or InSPC+.

43. Investigation of InSPC and InSPC+ has revealed glaringly substantial similarities with PQ Systems' Copyright protected software.

44. For example, comparison of a "Rules" file sourced from ProSPC and a similar file sourced from InSPC shows that the formatting and naming conventions for each are largely identical.

45. Likewise, review of XML files for chart definitions sourced from ProSPC and InSPC show virtually identical formatting and naming conventions.

46. Additionally, review of "properties" files from the InSPC+ language database and a similar language database from GAGEpack contain identical information, including the name "Jeff" which appears in an author line for both, and the name "PQ Systems (Europe) Ltd." which appears in the Company line for both.

47. Mr. Aughton's involvement in the development of InSPC is confirmed by the multiple instances of "developed by Factoria" appearing within the program.

48. InSPC and/or InSPC+ provides sample charts for clients of Cybermetrics, similar to the sample charts provided by PQ Systems' CHARTrunner and SQCpack.

49. The sample charts provided with CyberMetrics' InSPC and/or InSPC+ software utilize identical statistics from the book "Improving Healthcare With Control Charts," written by Raymond G. Carey, which were provided to PQ Systems 18 years ago by authority of Mr. Carey himself.

50. CyberMetrics has no relationship with Raymond G. Carey, and never received authorization to use his data in their sample charts.

51. CyberMetrics copied or directed Aughton to copy the data from Raymond G. Carey's book and create sample charts functionally identical to PQ Systems' charts.

52. CyberMetrics employed Aughton with the intention of copying PQ Systems' Productivity Quality Software, such as SQCpack, CHARTrunner, ProSPC, PqChartCore, and GAGEpack, in order to fast track InSPC and/or InSPC+ as a product

8

sufficient to compete with PQ Systems' decades of experience in statistical process control software.

53. CyberMetrics began offering InSPC and/or InSPC+ to the public in August of 2017.

54. In furtherance of the creation of Productivity Quality Software, and other similar works, PQ Systems has over many years and at great expense developed proprietary materials, applications, information, and procedures that are unknown to the public, which are only revealed internally to employees and contractors of PQ Systems pursuant to confidentiality and non-disclosure agreements ("PQ Systems Trade Secrets"). PQ Systems also takes measures to guard closely and maintain the secrecy of all of its sensitive and valuable information including, without limitation, restricting access to only those employees and contractors with a specific need to know the information, and setting up security measures, including firewalls, to insure that unauthorized persons or competitors cannot access the servers containing its information.

55. In connection with his employment with PQ Systems, Aughton signed an employment agreement containing clauses obligating him to avoid unauthorized disclosure of and maintain the confidentiality of PQ Systems' proprietary information and/or trade secrets.

56. Cybermetrics has been aware of Aughton's former employment with PQ Systems and his confidentiality and non-disclosure agreement with PQ Systems.

57. In connection with the foregoing activities, CyberMetrics has obtained proprietary and confidential information regarding PQ Systems' unknown software

code, customers and business plans from Aughton, knowingly causing Aughton to breach his contractual obligations to PQ Systems.

58. At no time did PQ Systems authorize CyberMetrics to create reproductions or derivatives of PQ Systems Copyright protected, confidential, or proprietary materials, including its trade secrets, and at no time did PQ Systems authorize CyberMetrics to display or distribute such reproductions or derivatives.

59. At no time did PQ Systems authorize Aughton or any other person to disclose its trade secrets or other confidential information to CyberMetrics or other unauthorized third parties.

60. The Defendant continues to reproduce, make derivative works of, distribute and display PQ Systems' copyright-protected materials, continue to exploit the PQ Systems' trade secrets, and is utilizing PQ Systems' proprietary information to interfere with PQ Systems' contractual relations, causing significant damage to PQ Systems.

**COUNT I**
**COPYRIGHT INFRINGEMENT**
**(17 U.S.C. §§ 106 and 501)**

61. PQ Systems incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

62. The Copyright Works are original works of authorship and PQ Systems is the sole and exclusive owner of all right, title and interest in and to the copyright in the Copyright Works.

63. PQ Systems has filed copyright applications with the U.S. Copyright Office for all of the Copyright Works, some of which have been previously registered.

64. CyberMetrics has not received any license, assignment, or other authorization to exploit and reproduce the Copyright Works.

65. CyberMetrics had access to the Copyright Works, as the works are available for sale to the public, CyberMetrics has expressed explicit interest in purchasing rights to the Copyright Works, and CyberMetrics has ultimately employed a former employee of PQ Systems who has intimate knowledge of each of the Copyright Works.

66. InSPC and/or InSPC+ are substantially similar to PQ Systems' Copyright Works.

67. CyberMetrics has and continues to reproduce, make derivative works of, distribute and display the Copyright Works, in violation of the Copyright Act of 1976, U.S.C. §501.

68. CyberMetrics' acts of infringement alleged herein are committed willfully and in knowing disregard of PQ Systems' rights.

69. As a result of CyberMetrics ongoing acts of infringement alleged herein and in accordance with 17 U.S.C. §504(b), PQ Systems is entitled to recover from CyberMetrics the damages it has sustained, and will sustain, and any profits obtained by CyberMetrics as a result of or attributable to their infringement. At present, the amount of such damages and profits cannot be fully ascertained by PQ Systems.

70. As a result of CyberMetrics ongoing acts of willful infringement alleged herein, PQ Systems is also entitled to elect to receive statutory damages, costs and attorney's fees, pursuant to §504(c).

## COUNT II
## MISAPPROPRIATION OF TRADE SECRETS
### (Ohio Uniform Trade Secrets Act, Ohio Rev. Code Ann. §1333.61, et seq.)

71. PQ Systems incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

72. PQ Systems undertook substantial efforts to maintain the secrecy of PQ Systems' trade secrets, and other confidential and proprietary information.

73. PQ Systems' confidential and proprietary information constitutes trade secrets within the meaning of Ohio Uniform Trade Secrets Act, Ohio Rev. Code Ann. §1333.61, *et seq*.

74. CyberMetrics has misappropriated, acquired, used, and will inevitably use in the future, unless enjoined by this Court, the PQ Systems' trade secrets.

75. As a direct and proximate result of CyberMetrics' misappropriation of trade secrets, PQ Systems has been damaged in an amount to be proven at trial.

76. CyberMetrics knew or had reason to know that PQ Systems trade secrets were acquired for an improper purpose and by improper means.

77. CyberMetrics misappropriation of the PQ Systems' trade secrets was willful and malicious, entitling PQ Systems to an award of attorneys' fees and punitive damages.

78. PQ Systems is further entitled to an injunction prohibiting CyberMetrics from misappropriating and/or using any trade secret and other confidential information owned by PQ Systems, and ordering an immediate return of all documents, information or property taken from PQ systems by CyberMetrics.

79. PQ Systems has been and will continue to be damaged as a result of CyberMetrics' activities.

80. PQ Systems has lost and is threatened with losing valuable sales, customers, trade secrets, its competitive advantage, and good will, and CyberMetrics conduct and acts, as alleged above, will continue to cause irreparable harm to PQ Systems unless enjoined by this Court.

81. Damages alone will not provide PQ Systems with an adequate remedy at law.

## COUNT III
## TORTIOUS INTERFERENCE WITH A CONTRACT

82. PQ Systems incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

83. PQ Systems has a valid and existing contract with Aughton.

84. CyberMetrics is and have been aware of such contract.

85. CyberMetrics, without privilege, justification or cause, intentionally and unfairly interfered with PQ Systems' contract. CyberMetrics' interference has caused a certain contract to be breached.

86. As a direct and proximate result of CyberMetrics' tortious interference with PQ Systems' contracts, PQ Systems has been damaged in an amount to be proven at trial.

87. The actions of CyberMetrics in interfering with the contract was intentional and malicious, entitling PQ Systems to an award of punitive damages.

**PRAYER FOR RELIEF**

**WHEREFORE,** PQ Systems respectfully demands judgment against Defendant as follows:

(1) Awarding PQ Systems all of its damages for each of the alleged claims, in an amount to be determined at trial;

(2) That PQ Systems be awarded damages in accordance with the Copyright Act of 1976, 17 U.S.C. §504(b) and as shall otherwise appear that it has sustained, and continues to sustain, as a result of Defendants' copyright infringement, together with any profits obtained by Defendants as a result of the copyright infringement; or, if PQ Systems so elects, that PQ Systems be awarded statutory damages pursuant to §504(c);

(3) That PQ Systems be awarded its costs and attorney's fees in bringing this copyright infringement action as authorized by the Copyright Act, 17 U.S.C. §505;

(4) A preliminary and permanent injunction prohibiting Defendant from misappropriating and/or using any trade secret and other confidential and proprietary information owned by PQ Systems, and ordering an immediate return of all documents, information, Copyright Works or other property taken from PQ Systems by Defendant;

(5) A preliminary and permanent injunction enjoining Defendant from (i) soliciting and/or servicing PQ Systems' customers until a date occurring at least two years after conclusion of trial on this matter, (ii) soliciting or seeking to hire PQ Systems' employees until a date occurring at least two years after conclusion of trial on this matter;

(6) That Defendant be directed to destroy any unauthorized copies, reproductions, or derivatives of the Copyright Works which cannot be returned;

(7) That PQ Systems be awarded its attorney's fees and the costs of this action;

(8)  That PQ Systems be awarded punitive damages;

(9)  Such other relief to which PQ Systems may be entitled to at law or in equity.

Dated this 18th day of October, 2017.

Respectfully submitted,

*/s/* April L. Besl
April L. Besl (82542)
Michael J. Wheeler (95319)
Dinsmore & Shohl LLP
255 East Fifth Street
Suite 1900
Cincinnati, OH 45202
*Attorneys for Plaintiff, PQ Systems.*

15