# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| PRODUCTIVITY-QUALITY SYSTEMS, INC., | : | Case No. 3:17-cv-00369 |
| | : | |
| | : | District Judge Walter H. Rice |
| Plaintiff, | : | Magistrate Judge Sharon L. Ovington |
| vs. | : | |
| | : | |
| CYBERMETRICS CORPORATION, | : | |
| | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[1]

## I.    Introduction

Plaintiff Productivity-Quality Systems, Inc. and Defendant CyberMetrics Corporation are computer software developers.  They are competitors in the battle for clients to use their respective software products that operate to improve quality control.  The market for clients who use, or might use, their software products appears to be very large in light of Plaintiff's assertion that it serves "clients in all 50 states, Europe, Africa, and Australia."  (Doc. #1, ¶9).

Plaintiff alleges that CyberMetrics conspired with one of Plaintiff's former employees, Jeff Aughton, to misappropriate and exploit software that Aughton had developed while under Plaintiff's employ.  *Id.* at ¶5.  Plaintiff claims that through such activities, CyberMetrics has infringed Plaintiff's copyrights in violation of federal law,

_____

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

misappropriated its trade secrets and other proprietary information in violation of Ohio law, and tortiously interfered with its contract with Aughton.

Defendant CyberMetrics seeks dismissal of Plaintiff's Complaint under Fed. R. Civ. P. 12(b)(6) or, alternatively, dismissal or transfer of venue under Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406. Plaintiff opposes dismissal under Rule 12(b)(6). Plaintiff also opposes dismissal or transfer for improper venue.

## II. Background

When reviewing Plaintiff's Complaint under Rule 12(b)(6), the Court accepts the Complaint's well-pleaded factual allegations as true, construes the Complaint in Plaintiff's favor, and draws all reasonable inferences in Plaintiff's favor. *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016). Doing so reveals the following.

Plaintiff is an Ohio corporation with a principle business address in Dayton, Ohio. After Plaintiff was incorporated in 1984, it began to offer "its flagship statistical process control software, SQCpack…." (Doc. #1, ¶7). This software assists its users in collecting, analyzing, and processing data and statistics related to quality control. It is a "widely distributed product, and is currently installed on workstations at many Fortune 100 companies and household names in the automotive, pharmaceutical, and software development industries, among others." *Id*. at ¶10. Soon after Plaintiff's incorporation it secured a toll-free telephone number, 800-777-3020, which it still retains today.

In 1986, Plaintiff expanded its software products to include "GAGEpack gage management software. GAGEpack allows … clients to manage various measurement devices, instruments and gages." *Id*. at ¶11. In 1991, Plaintiff applied for and received U.S.

Copyright Registrations for its GAGEpack, SQCpack 3.1, and SQCpack plus 1.2 software. In 1999, Plaintiff supplemented its SQCpack with "CHARTrunner." *Id.* at ¶13. CHARTrunner helps Plaintiff's clients create charts and graphs based on statistical data collected by Plaintiff's software. To demonstrate the types of charts and graphs CHARTrunner can create, Plaintiff has for years provided its clients with sample charts and graphs. *Id.* at ¶14.

Returning to the eighties, in 1988 Defendant CyberMetrics began selling GAGEtrack, a product that competes with Plaintiff's GAGEpack. *Id.* at ¶36. At that time, CyberMetrics secured a toll-free telephone number, 800-777-7020. This number has one different digit different from Plaintiff's toll-free phone number, 800-777-3020.

Jeff Aughton began working for Plaintiff in 1989 as a software developer. He worked on SQCpack, GAGEpack, and he later helped develop CHARTrunner before and after its release. At some point during Aughton's first 24 years with Plaintiff, he became a manager. This position gave him access to all Plaintiff's "proprietary information, including its trade secrets, source code for all its software, and other confidential information regarding [Plaintiff's] clients and business plans." [2] *Id.* at ¶24.

It appears that for many years no litigious problems existed between Plaintiff and CyberMetrics. Hints that this might be changing began to emerge in 2013 when one of its former employees, David Todd, informed Plaintiff that he had been working with Jeff

---

[2] Software source code is "written by a programmer in a high-level language and readable by people but not computers. Source code must be converted to object code or machine language before a computer can read or execute the program." The American Heritage Dictionary, 5th Ed. (2018); https://ahdictionary.com (search for "source code").

Aughton to develop software based on CHARTrunner. At that time, Plaintiff still employed Aughton. Todd told Plaintiff that his company planned to call its CHARTrunner-based product "ProSPC." *Id.* at ¶24. Todd also informed Plaintiff that his company planned to offer ProSPC in competition with Plaintiff's software products. *Id.*

Plaintiff investigated and confirmed that Aughton was involved with ProSPC and planned to work with Todd to sell ProSPC through Todd's company. Aughton had written ProSPC back in 2007. He had also written (in 2006 or 2007) a program called PqChartCore—"charting code that was developed from and intended to be used in CHARTrunner…." *Id.* at ¶29. "Aughton ultimately inserted code from PqChartCore into both ProSPC and GAGEpack." *Id.* at ¶31. Plaintiff owns both PqChartCore and ProSPC. *Id.* at ¶32.

Upon learning of Aughton's involvement with Todd and his company, Plaintiff demoted Aughton from his managerial position. He resigned from Plaintiff's employ in May 2015. Several weeks later, he formed his own company called Factoria, Ltd.

What's all this have to do with Defendant CyberMetrics? The Complaint alleges that before August 2017, CyberMetrics hired Aughton and his company, Factoria, Ltd, to help create certain software products. At the time CyberMetrics hired Aughton, Plaintiff no longer employed him.[3] The names CyberMetrics chose for its Aughton-related products—

---

[3] In support of its alternative Motion to Dismiss or Change Venue, CyberMetrics relies on the affidavit of its president, Dave Banerjea. Banerjea alleges that Aughton "is not, and has never been, an employee of CyberMetrics…." (Doc. #12, *PageID* #56). Banerjea's allegation may not be accepted as true for the purpose of resolving CyberMetrics' Rule 12(b)(6) Motion because the Complaint's contrary allegations must be taken as true. *See Bickerstaff*, 830 F.3d at 396. Banerjea's allegation, moreover, might not be contrary to the Complaint's assertion that the

InSPC and InSPC+—are mellifluously reminiscent of the name—ProSPC—of the product

Aughton had developed in 2006 or 2007 while working for Plaintiff. This leads to

Plaintiff's central remonstrance:

> Under direction by CyberMetrics, Jeff Aughton used his specialized knowledge of [Plaintiff's] SQCpack, CHARTrunner, and GAGEpack, software as well as the derivative works of those software derivatives ProSPC and PqChartCore, to create copies and/or derivative works of those software which would ultimately be known as InSPC and InSPC+…. Investigation of [these CyberMetrics products] has revealed glaringly substantial similarities with [Plaintiff's] Copyright protected software.

* * *

> CyberMetrics employed Aughton with the intention of copying [Plaintiff's] Productivity Quality Software, such as SQCpack, CHARTrunner, ProSPC, PqChartCore, and GAGEpack, in order to fast track InSPC and/or InSPC+ as a product sufficient to compete with [Plaintiff's] decades of experience in statistical process control software.

*Id*. at 9, ¶s 42-43; *id*. at 10, ¶52. Plaintiff's Complaint continues to tell this tale with several

examples, such as "largely" or "virtually identical" formatting and naming conventions

within CyberMetrics' software files that correspond to Plaintiff's software products. *Id*. at

¶s 44-45. The Complaint next alleges, "review of 'properties' files from [CyberMetrics']

InSPC+ language database and a similar language from [Plaintiff's] GAGEpack contain

identical information, including the name "Jeff' which appears in an author line for both,

and the name 'PQ Systems (Europe) Ltd.' which appears in the Company line for both." *Id*.

at ¶46. And, "Aughton's involvement in the development of [CyberMetrics'] InSPC "is

---

CyberMetrics hired Aughton because the Complaint does not specify whether CyberMetrics hired Aughton as an employee or in some other role (e.g., independent contractor or consultant).

confirmed by the multiple instances of 'developed by Factoria' appearing within the program." *Id*. at ¶47.

The Complaint further maintains that CyberMetrics provides sample charts for its clients through InSPC or InSPC+. Those charts are similar to the charts Plaintiff provides its clients through CHARTrunner and SQCpack.

In August 2017, CyberMetrics began offering InSPC and InSPC+ to the public.

Plaintiff claims that CyberMetrics has and continues to reproduce, make derivative works of, distribute, and display Plaintiff's copyright-protected works including SQCpack, GAGEpack, CHARTrunner, ProSPC, PqChartCore, and related sample charts in violation of the Copyright Act of 1976, 17 U.S.C. §§ 106 and 501. Plaintiff further claims that CyberMetrics has misappropriated Plaintiff's trade secrets in violation of Ohio Rev. Code §1333.61, *et seq*., and has tortiously interfered with, and caused a breach of, Plaintiff's valid and existing contract with Aughton.

## III. Discussion: Plaintiff's Claims

### A. <u>Plausibility</u>

Under Federal Rule of Civil Procedure 8, "A pleading that states a claim for relief must contain: ... a short and plain statement of the claim showing that the pleader is entitled to relief; and ... a demand for the relief sought...." This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007); *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932 (1986)).

"To survive a motion to dismiss, a litigant must allege enough facts to make it plausible that the defendant bears legal liability. The facts cannot make it merely possible that the defendant is liable; they must make it plausible. Bare assertions of legal liability absent some corresponding facts are insufficient to state a claim." *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678) (other citations omitted).

The complaint does not need "detailed factual allegations," *Iqbal*, 556 U.S. at 678, but it must contain " 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action.' " *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2017) (citations omitted). "A plaintiff must 'plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' A plaintiff falls short if she pleads facts 'merely consistent with a defendant's liability' or if the alleged facts do not 'permit the court to infer more than the mere possibility of misconduct....' " *Id.* (quoting, in part, *Iqbal*, 556 U.S. at 678, 679).

### B. **Copyright Infringement**

CyberMetrics argues, "copyright infringement claims are subject to a higher pleading requirement." (Doc. #12, *PageID* #38). This is incorrect, if CyberMetrics posits that a pleading standard higher than the plausibility standard applies to claims of copyright infringement. *See National Business Dev. Servs., Inc. v. American Credit Educ. & Consulting, Inc.*, 299 F. App'x 509, 512 (6th Cir. 2008) (applying plausibility standard to claim of copyright infringement); *see also Great Minds v. FedEx Office and Print Services, Inc.*, 886 F.3d 91, 94 (2nd Cir. 2018) (same); *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1116 (9th Cir. 2018)(same); *Malibu Media, LLC v. Doe*, No. 1:14cv383, 2014 WL 4986467, at

**2-4 (S.D. Ohio 2014) (Black, D.J.) (same). CyberMetrics draws its reference to a "higher pleading requirement" from *National Business*, which states:

> Copyright infringement, like anti-trust actions, lends itself readily to abusive litigation, since the high cost of trying such a case can force a defendant who might otherwise be successful in trial to settle in order to avoid the time and expenditure of a resource intensive case. Therefore, greater particularity in pleading, through showing "plausible grounds," is required. Asking for plausible grounds ... simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement.

299 F. App'x. at 512 (citation omitted). The reference in *National Business* to "greater particularity in pleading" merely describes the plausibility standards rather than some higher pleading standard, as CyberMetrics hints, like the one imposed on fraud claims under Fed. R. Civ. P. 9(b). *See General Motors LLC. v. Dorman Products, Inc.*, 07-2290, 2017 WL 783469, at *2 (E.D. Mich. 2017) ("[T]his Court has interpreted *National Business* as consistent with the plausibility standard set forth in *Twombly* and *Iqbal*."). In the present case, as in *National Business*, Plaintiff's Complaint must state a plausible copyright claim or be dismissed under Rule 12(b)(6). *See id*.

* * *

Turning to the elements of copyright infringement, Plaintiff's Complaint must plausibly allege "(1) ownership of the copyright by the plaintiff and (2) copying by the defendant." *Zomba Enterprises, Inc. v. Panorama Records, Inc.*, 491 F.3d 574, 581 (6th Cir. 2007) (citations omitted); *see National Business*, 299 F. App'x. at 512; *see also Hobbs v. John*, 722 F.3d 1089, 1094 (7th Cir. 2013); *Malibu Textiles, Inc. v. H&M Hennes & Mauritz, L.P.*, 668 F. App'x 800, 801 (9th Cir. 2016); *Dorman Products*, 07-2290, 2017 WL 783469, at *2. "A plaintiff can show copying in two ways, either through direct evidence of

copying, or by indirect evidence. When there is no direct evidence of copying, a plaintiff may establish an inference of copying by showing (1) access to the allegedly-infringed work by the defendant(s) and (2) a substantial similarity between the two works at issue." *R.C. Olmstead, Inc. v. CU Interface, LLC*, 606 F.3d 262, 274 (6th Cir. 2010) (internal punctuation and citations omitted).

The Complaint easily satisfies the ownership element of copyright infringement. Plaintiff alleges that it owns valid copyright registrations covering its software systems GAGEpack, SQCpack 3.1, and SQC pack plus 1.2 software (TXu000464578, TXu000466964, TXu000466951). Given the Complaint's references to this software and its accompanying copyright registration numbers, Plaintiff has alleged plausible grounds upon which to base its claim of ownership of these copyrights.

The Complaint also alleges sufficiently specific facts to raise a plausible inference that CyberMetrics copied Plaintiff's registered copyright software. Plaintiff maintains that CyberMetrics acquired access to Plaintiff's copyright-protected software by hiring one of its former employees, Jeff Aughton, who helped develop and had access to Plaintiff's software source code during his employment with Plaintiff. (Doc. #1, ¶22). The Complaint further explains that Aughton began his employment with Plaintiff as a software developer working on two of its software systems, SQCpack and GAGEpack. He later worked on the development of CHARTrunner both before and after its release in 1999. Aughton also purportedly wrote software—namely, "ProSPC software, which was derivative of [Plaintiff's] CHARTrunner software…," and "PqChartCore, charting code that was developed from and intended to be used in CHARTrunner…." *Id.* at ¶s 28-29. He

performed this software-development work in approximately 2006 to 2007 while he was employed by Plaintiff. The Complaint asserts further, "ProSPC and PqChartCore are both owned by [Plaintiff]." *Id.* at ¶32.

The Complaint connects CyberMetrics and its copying activities with Aughton and his specialized knowledge of Plaintiff's copyright-protected software through its central remonstrance, which is worth repeating:

> Under direction by CyberMetrics, Jeff Aughton used his specialized knowledge of [Plaintiff's] SQCpack, CHARTrunner, and GAGEpack, software as well as the derivative works of those software derivatives ProSPC and PqChartCore, to create copies and/or derivative works of those software which would ultimately be known as InSPC and InSPC+….

*Id.* at ¶42.

The Complaint continues, "CyberMetrics employed Aughton with the intention of copying [Plaintiff's] Productivity Quality Software, such as SQCpack, CHARTrunner, ProSPC, PqChartCore, and GAGEpack, in order to fast track InSPC and/or INSPC+ as a product sufficient to compete with [Plaintiff's] decades of experience in statistical process control software." *Id.* at ¶52. Such factual allegations suffice to plausibly show that CyberMetrics had access to Plaintiff's allegedly-infringed software, including the software source codes Aughton wrote or helped develop.[4] *See R.C. Olmstead*, 606 F.3d at 274.

The Complaint also sufficiently alleges substantial similarity between Plaintiff's copyright-protected software and CyberMetrics' allegedly infringing software. These allegations appear in the Complaint's description of Aughton's activities, at CyberMetrics

---

[4] CyberMetrics acknowledges, "all of the 'Copyright Works' defined in the Complaint relate to software source code." (Doc. #12, *PageID* #39).

behest, to use his specialized knowledge about Plaintiff's software to create copies for CyberMetrics to use in its InSPC or InSPC+ software. (Doc. #1, ¶42). The Complaint also provides examples of "glaringly substantial similarities" between InSPC and InSPC+ with Plaintiff's copyright-protected software. *Id*. at ¶43. The examples include, "a comparison of a 'Rules files sourced from ProSPC and a similar file sourced from InSPC shows that the formatting and naming conventions for each are largely identical"; "review of XLM files for chart definitions sourced from ProSPC and InSPC show virtually identical formatting and naming conventions"; review of 'properties' files from the InSPC+ language database and a similar language database from GAGEpack contain identical information…." *Id*. at ¶s 44-46. These and other allegations in the Complaint constitute plausible factual grounds for identifying substantial similarities between the software at issue.

CyberMetrics finds these alleged similarities insufficient. It argues that the Complaint never alleges that CyberMetrics infringed Plaintiff's software source code copyrights. This, however, overlooks the above reviewed facts that, if true, show CyberMetrics had access to and copied Plaintiff's copyright-protected software source codes through Aughton and or his company (Factoria, Ltd.).

CyberMetrics contends, "Because the Copyright Works [identified in the Complaint] allegedly cover software source code, and a copy of the formatting and naming conventions do not constitute a copy of source code, those allegations fall short of alleging that any of the Copyright Works were infringed." (Doc. #12, *PageID* #40). CyberMetrics points out that the Complaint refers to "'Copyright Works,' which are defined as unregistered works.

Unregistered works are specifically excluded from suit by 17 U.S.C. § 411….” (Doc. #12, *PageID* #40).

CyberMetrics is generally correct that claims of copyright infringement may not be grounded on unregistered works. Section 411(a) precludes civil actions for copyright infringement “until preregistration or registration of the copyright claim has been made in accordance with this title….” Indeed, “a cause of action for [copyright] infringement cannot be enforced until the artist actually registers the copyright pursuant to the requirements of the Copyright Act.” *Coles v. Wonder*, 283 F.3d 798, 801 (6th Cir. 2002) (citing 17 U.S.C. § 411(a)). CyberMetrics is therefore correct that Plaintiff cannot base its claim of copyright infringement on works that it has not preregistered or registered as 17 U.S.C. § 411(a) requires. *Id*.

Yet, Plaintiff’s copyright-infringement claim rests on CyberMetrics’ alleged copying of works that have been preregistered or registered as § 411(a) requires—namely, GAGEpack, SQCpack 3.1, and SQC pack plus 1.2 software (TXu000464578, TXu000466964, TXu000466951). Accepting, moreover, that the Complaint includes within its universe of “Copyright Works” both registered and unregistered works is a red herring. The presence of this duality fails to eliminate Plaintiff’s allegations, and the reasonable inference flowing from them, about Aughton’s activities in writing software source code while employed by Plaintiff and CyberMetrics’ alleged direction to Aughton—when CyberMetrics later employed him—to use his specialized knowledge of Plaintiff’s software “to create copies and/or derivative works of those software which would ultimately be known as InSPC and/or InSPC+.” (Doc. #1, ¶42). It is reasonable to infer from these

allegations that what CyberMetrics copied through Aughton's specialized knowledge and work included Plaintiff's copyright-protected software source codes. This reasonable inference is not eradicated by the examples the Complaint provides of the "glaringly substantial similarities" such as CyberMetrics use of similar or identical formatting and naming conventions, its use of the name "Jeff" or the phrase "developed by Factoria," or its use of identical statistics in the sample charts it provides to customers. Assuming that such naming conventions, etc., are not registered copyright works and, therefore, not subject to copyright protection, it still remains that the Complaint asserts sufficient factual allegations to raise a plausible claim that CyberMetrics, through Aughton, copied Plaintiff's registered copyright-protected software source codes.

Indeed, Plaintiff Complaint is not alleging that CyberMetrics merely copied the naming and formatting and conventions, etc., listed in the infringed source code. Rather, Plaintiff is charging that CyberMetrics not only infringed Plaintiff's copyrighted works by copying or making derivative works of the software, CyberMetrics did so by copying Plaintiff's source code in such a complete manner that it failed to even change the names to correlate to its own systems. And, doing so, CyberMetrics produced substantially similar products (InSPC and InSPC+), marketed to Plaintiff's consumers, with large portions of copied source code while utilizing Plaintiff's naming and formatting conventions, etc., without alteration. *See* Doc. #1, *PageID* #s 8-11.

CyberMetrics also attacks Plaintiff's formatting and naming conventions, names found in properties files, sample charts, and statistics as not eligible for copyright protection because they are functional ideas rather than creative expressions or are barred by the

13

doctrine of "scenes a faire."[5]  Assuming both of the possibilities are correct does not assist

CyberMetrics in showing that the Complaint fails to raise a plausible claim of infringement

of Plaintiff's registered copyright-protected software, including its source codes.  *See*

*Lexmark Intern., Inc. v. Static Control Components, Inc.,* 387 F.3d 522, 533 (6th Cir.2004)

(citing H.R. Rep. No. 1476 (1976), reprinted in 1976 U.S.C.C.A.N. 5659, 5667 ("The term

'literary works'... includes ... computer programs to the extent that they incorporate

authorship in the programmer's expression of original ideas, as distinguished from the ideas

themselves.") (case citations omitted).

Accordingly, CyberMetrics' Motion to Dismiss Plaintiff's claim of copyright

infringement lacks merit.

### C.  <u>Misappropriation of Trade Secrets</u>

Plaintiff claims that CyberMetrics misappropriated its trade secrets in violation of

Ohio's Uniform Trade Secrets Act, Ohio Rev. Code. §§ 1333.61, *et seq*.

CyberMetrics maintains that Plaintiff's Complaint fails to raise a plausible claim for

relief because it fails to identify any specific trade secret, fails to identify any confidential

relationship it had with CyberMetrics, and fails to allege that CyberMetrics used any

information without authorization.

"The Ohio Uniform Trade Secrets Act (OUTSA) provides for damages and

injunctive relief to a plaintiff whose trade secrets have been misappropriated."  *Stolle*

---

[5] "[W]hen external factors constrain the choice of expressive vehicle, the doctrine of 'scenes a faire'—'scenes,' in other words, 'that must be done'—precludes copyright protection*." Lexmark Intern., Inc. v. Static Control Components, Inc*., 387 F.3d 522, 535 (6th Cir. 2004).

*Machinery Co., LLC v. RAM Precision Industries*, 605 F. App'x 473, 481 (6th Cir. 2015)

(citing Ohio Rev. Code §§ 1333.61–69). "Trade secrets" are:

> Information, including the whole or any portion of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement…, that satisfies both of the following:
>
> > (1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertained by proper means by, other persons who can obtain economic value from its disclosure or use.
> >
> > (2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Ohio Rev. Code. §1333.61(D).

Plaintiff's Complaint adequately identifies its "trade secrets" by naming them "PQ Systems Trade Secrets" and then coloring in that phrase to include "proprietary materials, applications, information, and procedures that are unknown to the public, which are only revealed internally to employees and contractors of PQ Systems pursuant to confidentiality and non-disclosure agreements." (Doc. #1, ¶54). Plaintiff further alleges, "CyberMetrics has obtained proprietary and confidential information regarding [Plaintiff's] unknown software code, customer and business plans from Aughton …." *Id*. at ¶57. Aughton's employment by Plaintiff, including his work as a manager, provided him with "access to all of [Plaintiff's] proprietary information, including its trade secrets…." *Id*. at ¶22. These allegations suffice to identify Plaintiff's trade secrets above a speculative level. *See Rotex Global, LLC v. CPI Wirecloth & Screens, Inc.*, No. 1:16cv244, 2016 WL 776886, at *6 (S.D. Ohio 2016) (Black, D.J.) (finding pleading adequate to show plausible trade secrets through allegations trade secret information included "(a) the manufacture of screens and

screen technology, (b) its customer lists, and (c) its customers and their preferences.").

CyberMetrics contends that Plaintiff's generalities fail to specifically identify a single trade secret, and the Complaint therefore fails to raise a plausible misappropriation claim. Yet, Plaintiff's allegations, particularly its allegations of unknown customer and business plans, provide adequate information upon which a reasonable inference can be drawn that Plaintiff's "trade secrets" are at issue. "'[S]o long as [the plaintiff] can put forth general categories of its trade secrets and provide the type of factual allegations ... that allow for the reasonable inference that [the defendants] improperly disclosed some of those trade secrets ... [the plaintiff] has done all that is required to survive a motion to dismiss.'" (brackets in original) (citation omitted)). *Phoenix Process Equip. Co. v. Capital Equip. & Trading Corp.*, 2017 WL 157834, at *8 (W.D. Ky. 2017) (Kentucky Uniform Trade Secrets Act). Levelheaded reasoning buttresses this:

> [V]arious federal courts have agreed that plaintiffs' pleadings need not disclose in detail trade secrets that have been misappropriated. This makes sense: Trade secrets are valuable because they *are secret*—the secret information gives the user a competitive edge in a market for the very reason that the information is unknown to competitors. Requiring a plaintiff to disclose with specificity what trade secrets were misappropriated would expose the secrets and undermine their value.

*Church Mut. Ins. Co. v. Smith*, 2015 WL 3480656, at *4 (W.D. Ky. 2015) (citing *AutoMed Techn., Inc. v. Eller,* 160 F.Supp.2d 915, 920–21 (N.D. Ill. 2001)); *see TMX Funding, Inc. v. Impero Technologies, Inc*., 2010 WL 2509979, at *3 (N.D. Cal. 2010) (trade secrets properly pled to include, in part, "software, source codes, data, formulas, and other technical information developed as proprietary and confidential products and services....'); *cf. Men v. Cutlip*, 2012 WL 12875776, at *5 (W.D. Mich. 2012) ("While [the plaintiff] will eventually

have to identify its trade secrets in significantly more detail to prevail on its claim, Defendants fail to cite any authority that would require it to do so in its initial pleading.").[6]

CyberMetrics contends for the first time in its Reply that by filing the application for copyright protection, Plaintiff has destroyed the secrecy of its trade secrets. CyberMetrics cites, as an example, *Tedder Boat Ramp Sys., Inc. v. Hillsborough County*, 54 F.Supp.2d 1300 (M.D. Fla. 1999). *Tedder*, however, is not controlling precedent in this Court and is somewhat controversial. *See Compuware Corp. v. Serena Software Intern., Inc.,* 77 F.Supp.2d 816, 825 n.24 (E.D. Mich. 1999) (declining to apply *Tedder*). Consequently, *Tedder* might or might not provide meaningful guidance in the present case. *See id*. Given this, and because CyberMetrics has essentially deprived Plaintiff of the opportunity to address *Tedder* by citing it for the first time in its Reply, it would be premature to address herein.

CyberMetrics argues that the Complaint fails to claim that CyberMetrics acquired, used, or disclosed the alleged trade secrets through a confidential relation or any improper means. This is incorrect. The Complaint connects Aughton and his knowledge of Plaintiff's trade secrets to CyberMetrics and also contains facts that when taken as true plausibly show CyberMetrics used Plaintiff's trade secrets to its own financial benefit while causing financial harm to Plaintiff. (Doc. #1, at ¶s 41-42, 53-54-60 and *see PageID* #s 14-

---

[6] Consideration of these cases involving other states' Uniform Trade Secret Acts is appropriate. *See Avery Dennison Corp. v. Four Pillars Enterprise Co*., 45 F. App'x 479, 486 (6th Cir. 2002). ("O.R.C. 1333.68 instructs us to construe the provisions of the Act 'to effectuate their general purpose to make uniform the law with respect to their subject among states enacting them.' We therefore draw on the law of other jurisdictions as well to aid us in construing the Ohio statute.").

15).[7]

CyberMetrics maintains that the Complaint fails to show unauthorized use of Plaintiff's trade secrets but instead raises only bare legal conclusions. This contention lacks merit. *See* Doc. #1, *¶s* 56-60 and *PageID* #s 14-15.

Accordingly, CyberMetrics' Motion to Dismiss Plaintiff's misappropriation claim lacks merit.

### D.    Interference with Contract

CyberMetrics contends that the Complaint fails to allege any facts to indicate that CyberMetrics (1) knew about the contract between Plaintiff and Aughton, (2) intended to interfere with any contract between them, or (3) interfered with a specific contract provision. CyberMetrics further asserts that the Complaint fails to describe any damages. Plaintiffs allegations, according to CyberMetrics are merely naked assertions void of further factual enhancement, rather than raising facts sufficient to state a plausible claim.

The elements of tortious interference with contract are "(1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) the lack of justification, and (5) resulting damages." *Georgia-Pacific Consumer Products LP v. Four-U-Packaging, Inc*., 701 F.3d 1093, 1102 (6th Cir. 2012) (citation omitted).

---

[7] Although the parties do not discuss this, it is intriguing to note, "Information that constitutes a trade secret pursuant to [Ohio] R.C. 1333.61(D) does not lose its character as a trade secret if it has been memorized. It is the information that is protected by the [Ohio] UTSA, regardless of the manner, mode, or form in which it is stored—whether on paper, in a computer, in one's memory, or in any other medium." *Al Minor & Assoc., Inc. v. Martin*, 117 Ohio St.3d 58, 64 (2008).

The Complaint alleges that an employment contract existed between Plaintiff and Aughton that "contain[ed] clauses obligating him to avoid unauthorized disclosure of and maintain the confidentiality of [Plaintiff's] proprietary information and/or trade secrets." (Doc. #1, ¶55). The Complaint states that CyberMetrics was aware of Aughton's former employment with Plaintiff and of his "confidentiality and non-disclosure agreement with [Plaintiff]." *Id*. at ¶56. And, according to the Complaint, "CyberMetrics has obtained proprietary and confidential information regarding [Plaintiff's] unknown software code, customers and business plans from Aughton, knowingly causing Aughton to breach his contractual obligations to [Plaintiff]." *Id*. at ¶57. These allegations go beyond mere naked assertions of fact and suffice to raise a plausible claim that CyberMetrics interfered with Plaintiff's contract with Aughton.

Accordingly, Defendant's Motion to Dismiss Plaintiff's claim of tortious interference with contract lacks merit.

## IV.    Discussion: Venue (Dismissal or Transfer)

CyberMetrics contends that venue is improper in the Southern District of Ohio because Plaintiff never alleges that CyberMetrics resides in, or can be found, in Ohio, or that CyberMetrics committed an alleged wrongful act in Ohio. CyberMetrics further contends that venue is improper here because Plaintiff fails to allege a connection between Plaintiff's claims and the State of Ohio. And, CyberMetrics argues that Plaintiff has merely advanced inadequate generalized statements rather than fact-specific allegations concerning venue.

In general, civil cases are properly venued in any of three locations. *See* 28 U.S.C. § 1391(b)(1)-(3). Plaintiff's Complaint touches upon (without citation) § 1391(b)(2), which

provides: "A civil action may be brought in … a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated…." *See* Doc. #1, *PageID* #s 4-5, ¶6 ("Venue is proper in the … Southern District of Ohio because a substantial portion of the acts giving rise to this case, including copyright infringement…, occurred … [here], and a substantial part of [Plaintiff's] property that is the subject of this action is located there.").

The Copyright Act contains its own venue statute that says, "Civil actions…, arising under any Act of Congress relating to copyrights… may be instituted in the district in which the defendant or his agent resides or may be found."  28 U.S.C. § 1400(a).  "For all venue purposes…," a corporate defendant, such as CyberMetrics, "shall be deemed to reside…, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question…."  28 U.S.C. § 1391(c).

Plaintiff contends that CyberMetrics has waived its challenge to venue in this District by failing to seek dismissal under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. This is correct because of the somewhat unique relationship between personal jurisdiction, the Copyright Act's venue statute, and Rule 12(h).  *Centerville ALF, Inc. v. Balanced Care Corp.*, 197 F.Supp.2d 1039 (S.D. Ohio 2002) (Rice, Chief D.J.) cogently explains:

> Personal jurisdiction "represents a restriction on judicial power ... as a matter of individual liberty."  *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982).  In contrast, "[t]he purpose of the [venue] rule is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits."  *Mosley v. General Motors Corp.,* 497 F.2d 1330, 1333 (8th Cir. 1974).  As stated by the Federal Circuit:
>
> > Venue, which connotes locality, serves the purpose of protecting a defendant from the inconvenience of having to defend an action in a

trial court that is either remote from the defendant's residence or from the place where the acts underlying the controversy occurred. 1A(2) J. Moore, W. Taggart, A. Vestal, J. Wicker & B. Ringle, Moore's Federal Practice ¶ 0.340 (2d ed. 1990). The venue statutes achieve this by limiting a plaintiff's choice of forum to only certain courts from among all those which might otherwise acquire personal jurisdiction over the defendant.

*VE Holding Corp. v. Johnson Gas Appliance Co*., 917 F.2d 1574, 1576 (Fed. Cir. 1990).

With both personal jurisdiction and venue, a party may insist that the limitation be observed, or he may forgo that right, effectively consenting to the court's exercise of adjudicatory authority. *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 583, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999); *see* Fed. R. Civ. P. 12(h)(1). Challenges to personal jurisdiction and to venue must be raised separately, and failure to raise challenges results in waiver of the defenses. Fed. R. Civ. P. 12(h)(1).

197 F.Supp.2d at 1047.

CyberMetrics contends that the waiver situation found in *Centerville ALF*, and other cases Plaintiff cites, is distinguishable from the instant case because Plaintiff has never alleged venue based on CyberMetrics' place of residence. CyberMetrics is correct to point out that Plaintiff's Complaint rests its venue allegations concerning its copyright-infringement claim on the "substantial contacts" language in the general venue statute rather than the residency or "may-be-found" language in the Copyright Act's venue statute. Plaintiff's reliance on the general venue statute as to its copyright-infringement claim might well be characterized as a fumble. *See Collins v. Doe*, 2012 WL 1414246, at *3 (S.D. Tex. 2012) ("The general venue statute, 28 U.S.C. § 1391(b), governs most claims brought in federal court. Copyright-infringement claims are an exception. For copyright-infringement claims, 28 U.S.C. § 1400(a), not 28 U.S.C. 1391(b), governs venue."); *see also West Coast Productions, Inc. v. Does*, 1-1911, 2011 WL 11049265, at *1 n.1 (D. D.C. 2011) ("The

complaint also cites 28 U.S.C. § 1391(b), but since copyright infringement is the sole claim set forth in the complaint, it is 28 U.S.C. § 1400(a), the exclusive venue provision for actions brought under the Copyright Act, that controls."); *but see Shropshire v. Fred Rappoport Co.*, 294 F.Supp.2d 1085, 1094 (N.D. Cal. 2003) (describing the general venue statute and the Copyright Act's venue statute as alternatives for copyright claims). Yet, assuming it is a fumble does not assist CyberMetrics in its effort to distinguish *Centerville ALF*, and other cases Plaintiff cites, from the present case. The key waiver attribute in *Centerville ALF* was not that the plaintiff based its venue claims on defendant's residency or on the Court's personal jurisdiction over the defendant. The key instead was that the defendant "conceded that this Court has personal jurisdiction over it for each of Plaintiff's claims, by virtue of its failure to raise a 12(b)(2) defense. Defendant is deemed to reside in the Southern District of Ohio for purposes of venue." 197 F.Supp.2d at 1048. The same omission here results in the same waiver: CyberMetrics has not challenged this Court's personal jurisdiction over it and has consequently waived its present venue protest. The fact, moreover, that Plaintiff did not base its venue assertions on CyberMetrics' residency does not alter the point that venue in relation to its copyright-infringement claim remains proper where CyberMetrics resides, *see* §1400(a), which is in "any judicial district in which [it] is subject to the court's personal jurisdiction…." § 1391(c)(2). As a result, the corporate residency requirement discussed in *Centerville ALF* operates equally in—and is congruous with—the present case, even though Plaintiff did not plainly rest its venue assertion on CyberMetrics' residency in the Complaint.

      Accordingly, CyberMetrics has waived its venue challenges.

**IT IS THEREFORE RECOMMENDED THAT**:

1.  CyberMetrics' Motion To Dismiss Pursuant To Fed. R. Civ. P. 12(b)(6) Or, Alternatively, To Dismiss Or Transfer Pursuant To Fed. R. Civ. P. 12(b)(3) And 28 U.S.C. § 1406 (Doc. #12) be DENIED; and

2.  CyberMetrics' Motion To Stay Discovery (Doc. #21) be DENIED as moot.


April 30, 2018                                 *s/Sharon L. Ovington*
                                               Sharon L. Ovington
                                               United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).